# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

ROTHA SUE PHILLIPS                                                                                                PLAINTIFF

V.                                              NO. 4:08CV03591 JTR

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                                                                           DEFENDANT

## MEMORANDUM AND ORDER

### I. Introduction

Plaintiff, Rotha Sue Phillips, has appealed the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Disability Insurance Benefits ("DIB") (Tr. 60-62) and Supplemental Security Income ("SSI") (Tr. 165-68). Both parties have filed Appeal Briefs (docket entries #10 and #13), and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater,* 108 F.3d 185, 187 (8th Cir. 1997); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[1] "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

---

[1] *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

On April 24, 2006, Plaintiff filed applications for DIB and SSI, alleging disability since April 11, 2005,[2] due to back problems at L5-L6, with related back pain, asthma, chest pain, carpal tunnel syndrome, and obesity. (Tr. 78-99.) After Plaintiff's claim was denied at the initial and reconsideration levels, she requested a hearing before an Administrative Law Judge ("ALJ"). On December 13, 2007, the ALJ conducted an administrative hearing, where Plaintiff and a vocational expert ("VE") testified. (Tr. 176-201.)

At the time of the administrative hearing, Plaintiff was 51-years old and had obtained a GED. (Tr. 183.) Her past relevant work included jobs as a factory worker. (Tr. 183.)

The ALJ considered Plaintiff's impairments by way of the familiar five-step sequential evaluation process. Step 1 involves a determination of whether the claimant is involved in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(I) (2005), §416.920. If the claimant is, benefits are denied, regardless of medical condition, age, education, or work experience. *Id.*, § 404.1520(b), § 416.920.

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has a "severe" impairment, *i.e.*, an impairment or combination of impairments which significantly limits the claimant's ability to perform basic work activities. *Id.*, § 404.1520(4)(ii), §

---

[2]During the administrative hearing, Plaintiff's attorney amended the onset date to April 4, 2006. (Tr. 182-183.)

416.920.  If not, benefits are denied.  *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(a)(iii), § 416.920.³  If so, and the duration requirement is met, benefits are awarded.  *Id.*

Step 4 involves a determination of whether the claimant has sufficient RFC, despite the impairment(s), to perform the physical and mental demands of past relevant work.  *Id.*, § 404.1520(4)(iv), § 416.920.  If so, benefits are denied.  *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.*, § 404.1520(4)(v), § 416.920.  If so, benefits are denied; if not, benefits are awarded.  *Id.*

In his April 25, 2008 decision (Tr. 13-20), the ALJ found that: (1) at Step 1, Plaintiff had not engaged in substantial gainful activity since the alleged onset date; but (2) at Step 2, her medically determined impairments, which consisted of degenerative disc disease at L5-S1 and carpal tunnel syndrome (which had completely resolved after surgery), did *not* rise to the level of a "severe' impairment.  Therefore, the ALJ concluded his analysis at Step 2 and held that Plaintiff was not disabled.  (Tr. 19.)

On September 15, 2008, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner.  (Tr. 4-6.)  Plaintiff then filed her Complaint appealing that decision to this Court.  (Docket entry #2.)

---

³If the claimant's impairments do not meet or equal a Listing, then the ALJ must determine the claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence.  *Id.*, § 404.1520(e).  This RFC is then used by the ALJ in his analysis at Steps 4 or 5.  *Id.*

## II.  Analysis

In Plaintiff's Appeal Brief, she makes only one argument: substantial evidence does not support the ALJ's determination, at Step 2, that her bulging disc at L5-L6, and related degenerative disc disease and back pain, did *not* constitute a "severe" impairment which significantly limited her ability to perform basic work activities.  The Court concludes that this argument has merit.

**A.    Applicable Law**

At Step 2 of the sequential evaluation process, an ALJ must determine if a claimant suffers from an impairment or combination of impairments that significantly limit the claimant's ability to perform basic work activities.  *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003).  Furthermore, the long and well established definition of a "severe" impairment is one which has "*more than a minimal effect*" on the claimant's ability to perform basic work activities.  *Dixon*, 353 F.3d at 605.  Thus, when an ALJ makes a proper Step 2 determination that a claimant is not disabled, he is finding, based on the medical evidence, that all of the claimant's alleged impairments have only a *minimal effect* on his or her ability to work.

**B.    Medical Evidence**

On August 13, 2007, an MRI was performed on Plaintiff's lumbar spine. (Tr. 161.)  This procedure is regarded as the "gold standard" for evaluating and diagnosing problems with bulging or ruptured disc and nerve root impingement issues.  The results of this MRI revealed "mild degenerative disc disease with a posterior annular tear with a small broad-based central disc protrusion without thecal or nerve root compromise." *Id.*

On August 16, 2007, Dr. William Blankenship, an orthopedic specialist, saw Plaintiff "for problems with her lower back which she has had off and on since 1977 when she fell from a ladder."

(Tr. 159.) She told Dr. Blankenship that, when she coughs or sneezes, the pain sometimes goes down to her left foot. She also complained of left thigh numbness to the knee and intermittent numbness that goes down to the left great toe. *Id.* After reviewing the August 13 MRI, Dr. Blankenship agreed with the radiologist opinion that it showed "mild degenerative disc disease at L5-S1 with posterior annular tear and a small broad based disc protrusion with no evidence of disc extrusion, canal or foraminal compromise." (Tr. 160.) Dr. Blankenship's impression was that Plaintiff "has degenerative disc disease at L5-S1 and most of her complaints [of pain] are most likely of a mechanical basis." (*Id.*)

Dr. Blankenship recommended that Plaintiff "be seen by physical therapy" and placed on isometric exercise "twice a day several days a week for three weeks." He did not recommend that she take "anti-inflammatories" because of her GI problems. *Id.*

On September 17, 2007, Plaintiff again saw Dr. Blankenship for problems with her back and left lower extremity. Dr. Blankenship referred Plaintiff to Dr. Turbeville for EMG and nerve conduction studies of the lumbar spine and left lower extremity. (Tr. 158.) On September 18, 2007, Dr. Turbeville performed these nerve conduction studies and the results were negative. (Tr. 154-55.)

During the administrative hearing, Plaintiff testified that she took extra strength Tylenol for the pain in her back and knee but "they don't really do anything." (Tr. 186.) She indicated the pain in her back was so great that she "can't even put a fitted sheet on a bed without pain" and cannot stand long enough to do a full sink of dishes. *Id.*

She also testified that, while she saw the physical therapist, as directed by Dr. Blankenship, she could not do any of the exercises because it "hurt so bad." She stated that her back pain radiated down her left leg to the heel and described the pain as feeling like "little needles" or "little shocks."

(Tr. 192.) Finally, she stated that, due to her back pain, she can only: walk to the mailbox; lift 10 to 20 pounds from waist height but not "if she has to bend over to pick it up." (Tr. 195.)

Importantly, while Plaintiff's testimony appears to be exaggerated regarding the degree of her pain and limitations, she accurately described the focus, location, and sensation of the pain normally associated with a bulging disc in the lumbar spine. As indicated previously, the medical evidence unquestionably established that Plaintiff had a "posterior annular tear and a small broad based disc protrusion" at L5-S1, along with "mild degenerative disc disease."

## C.    The ALJ's Decision

In his decision, the ALJ accurately recited the foregoing medical evidence relevant to Plaintiff's back problem at L5-S1. However, in his summary of this evidence, he makes a clearly erroneous statement:

> The medical evidence of record shows very little or nothing wrong with the claimant and an orthopedic specialist [Dr. Blankenship] did not find anything wrong with her other than some mechanical issues.

(Tr. 18.)

Dr. Blankenship explicitly found, based on an MRI, that Plaintiff had "an annular tear and a small broad based disc protrusion" at L5-S1, along with "mild degenerative disc disease." This is a far cry from Plaintiff having "very little or nothing" wrong with her. Furthermore, it is a clear distortion of the medical record for the ALJ to state that *Dr. Blankenship did not find anything wrong with the Plaintiff "other than mechanical issues."*

Dr. Blankenship noted his impression that "most of her [Plaintiff's] complaints are most

likely of a mechanical basis."[4]  This means that Dr. Blankenship expected Plaintiff to experience pain during the mechanics of moving her spine, *i.e.* bending, stooping, lifting, carrying, and walking. The ALJ is flatly wrong in suggesting that a physician's characterization of a bulging disc as a "mechanical issue" somehow means that it cannot or does not impose limitations on a claimant's work-related activities.

The medical evidence in this case clearly demonstrates that the impairment in Plaintiff's lumbar spine is one which has "more than a minimal effect" on her ability to perform basic work activities.  Thus, this was not a proper case for the ALJ to conclude, at Step 2, that Plaintiff's bulging disc and degenerative disc disease at L5-S1 had only a minimal effect on her functional activities.

The Court agrees that, during the administrative hearing, Plaintiff exaggerated the duration and degree of her pain and the limitations it imposed on her ability to walk, sit, stand, lift, and carry. However, her lack of credibility does *not* undermine the clear medical evidence in the record that her bulging disc and degenerative disc disease had more than a minimal impact on her ability to perform basis work activities.  As a result, substantial evidence does not support the ALJ's Step 2 determination that Plaintiff was not disabled.[5]

---

[4]Pain can result from the mechanics of movement or from a neurological source.  In the case of neurological pain, it may occur regardless of whether mechanics of movement is involved. *Haulot v. Astrue*, 290 Fed. Appx. 53, 55 (9th Cir. 2008) (unpublished decision).

[5]Ironically, if the ALJ had proceeded to Step 4 and concluded that Plaintiff could return to some of her past relevant work, substantial evidence probably would have supported a decision that she was not disabled.  The Eighth Circuit acknowledged that an ALJ's error of law at Step 2 may be harmless where the evidence is "clearly against the claimant." *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).  However, in this case the ALJ's credibility analysis was premised in part on his erroneous conclusion that Dr. Blankenship's findings "showed little or nothing wrong" with Plaintiff.  Based on this record, the Court cannot find that the evidence "was so clearly against the claimant" that the ALJ's error at Step 2 was harmless.

### III. Conclusion

On remand, the ALJ should update the medical record and, depending on the medical evidence and the testimony of Plaintiff and the vocational expert, perform a complete 4 or 5 step analysis of Plaintiff's claim that she is disabled. .

IT IS THEREFORE ORDERED THAT the Commissioner's decision is reversed and this matter is remanded to the Commissioner for further proceedings pursuant to "sentence four," within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

DATED this 18th day of August, 2009.

_____
UNITED STATES MAGISTRATE JUDGE